# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**JOSEPH VERRIER,**

      Plaintiff,

  v.                                          Case No. 19-CV-1812

**DR. MURPHY,
DR. WHEATLY,
OFFICER A,
NURSE A,
NURSE B,
HEALTH MANAGER FOFANA,
DR. TANNAN,
RN HALVERSON,
NP HERMES,
NP BOWENS,
L. DOEHLING,
R. BUBOLZ,
T. GILLINGHAM,
SGT. KRAMER,
SGT. ROBERTS,
M. GREENWOOD,
UNIT DIRECTOR SABLE,
and SARAH FELTS,**

      Defendant(s).

---

## SCREENING ORDER

---

Plaintiff Joseph Verrier, an inmate at the Oshkosh Correctional Institution, filed a *pro se* complaint alleging that the defendants violated his rights under federal law. This matter is now before me on Verrier's motion for leave to proceed without prepaying the filing fee and for screening of his complaint.

The court has jurisdiction to resolve Verrier's motion to proceed without prepaying the filing fee and to screen the complaint in light of Verrier's consent to the full jurisdiction of a magistrate judge and the Wisconsin Department of Justice's limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memorandum of Understanding between the Wisconsin Department of Justice and this court.

*Motion for Leave to Proceed without Prepaying the Filing Fee*

The Prison Litigation Reform Act (PLRA) applies to this case because Verrier was a prisoner when he filed his complaint. *See* 28 U.S.C. § 1915(h). The PLRA allows the court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. § 1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He must then pay the balance of the $350 filing fee over time, through deductions from his prisoner account. *Id.*

On January 13, 2020, the court ordered Verrier to pay an initial partial filing fee of $9.58. (ECF No. 6.) Verrier paid that fee on January 22, 2020. I will grant Verrier's motion for leave to proceed without prepaying the filing fee. He must pay the remainder of the filing fee over time in the manner explained at the end of this order.

2

*Screening the Complaint*

   *1. Federal Screening Standard and Verrier's Allegations*

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state

3

law. *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes *pro se* complaints liberally and it holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

Verrier alleges that he "long term preexisting conditions of ulcerative colitis, a partial right knee replacement and osteoporosis in the right knee, and multiple broken/bulging lower disks in his spine." (Docket #1 at 2.) These conditions cause Verrier to have difficulty controlling his bowel movements, difficulty ascending and descending stairs, shooting pain in his back and legs which is intensified by stairs, chronic pain which is intensified by ascending and descending stairs, difficulty with sleep due to intense pain, inability to kneel due to a knee implant, anxiety, depression, and PTSD. (*Id.* at 2.)

Verrier alleges that on March 6, 2012, defendant Dr. Murphy of the Wisconsin Department of Corrections (DOC) noted Verrier's ulcerative colitis and modified right knee, and stated that a low tier restriction was necessary indefinitely to avoid falls. (*Id.* at 3.)

In August 2016, Verrier injured his back and spine when he slipped and fell on spilled liquid at Racine Correctional Institution. He says that officers continued to call inmates out to lunch without properly marking the spill area. Verrier mentions defendant Officer A, but he does not make any specific allegation regarding Officer A. (*Id.*)

4

In October 2018, a doctor at the Dodge Correctional Institution assessed Verrier and ordered a "low bunk low tier restriction based on his existing disabilities." (*Id.* at 4.) Verrier says that he has requested the name of this physician as well as his orders regarding Verrier's conditions and low bunk low tier order five times but has been unable to obtain this information. (*Id.*)

On August 10, 2019, Verrier submitted a request to renew the order, citing his existing conditions. (*Id.*) Defendant Nurse A informed Verrier that the low tier low bunk order had expired, that it was his responsibility to ask that it be renewed, and that Oshkosh Correctional Health Services was not responsible to notify or renew the order. (*Id.*) Nurse A indicated that Verrier's lower back pain and damaged vertebrae were not factor in the determination and indicated that "if he was in any way able to get to meals or the shower he was deemed physically able and the answer to the question was a yes." (*Id.*) Nurse A did not physically examine Verrier. (*Id.*)

On September 11, 2019, Verrier received a notice from the Special Needs Committee, consisting of defendants Dr. Murphy, Dr. Wheatley, NP Hermes, Manager Fofana, Dr. Tannan, NP Bowens, and RN Halverson, which stated that his request had been denied because it did not meet the criteria as defined in the policy. (*Id.* at 4-5.) On September 14, 2019, Verrier filed an inmate complaint regarding the denial of low bunk low tier restriction. (*Id.*)

On October 18, 2019, Verrier notified medical staff that he had been moved to an upper tier upper bunk, that he had already nearly fallen on the stairs, and that he could not kneel on the disk in his knee, a requirement for climbing into an upper

5

bunk. (*Id.*) The next day, defendant Nurse B conducted a limited physical exam on Verrier. (*Id.*) She did not evaluate the pain in his lower back and legs. (*Id.*) Also on October 19, 2019, Verrier notified defendant Sgt. Roberts[1], who has the authority to move inmates, of his condition. (*Id.* at 6.) Sgt. Roberts said that Verrier appeared healthy and that Roberts himself had broken his back from a fall and felt no need to accommodate Verrier. (*Id.*) Sgt. Roberts also said that prisoners had previously soiled themselves to attempt to gain benefits and that he would not accommodate Verrier unless medical staff and the computer directed him to do so. (*Id.*)

On October 21, 2019, defendant Bubolz, the institution complaint examiner, dismissed Verrier's complaint, citing established nursing protocols and the guidelines established in appendix 1 of policy 300.07. (*Id.*) Verrier appealed and the reviewing authority, defendant L. Doehling, upheld the dismissal. (*Id.* at 7.)

Verrier alleges that Bubolz neglected his duties by ignoring the facts pointed out by Verrier and relying on a member of the panel who rejected Verrier's request to evaluate the necessity. (*Id.*) He states that Bubolz ignored his clearly established disabilities and failed to take actions within his scope of authority to accommodate Verrier. (*Id.*) Verrier also alleges that defendants Bubolz, Doehling, M. Greenwood, and Sable violate the ICE process and the protections it is intended to afford inmates.

---

[1] Verrier refers to this defendant as both "Sgt. Rodgers" and "Sgt. Roberts." Verrier names Sgt. Roberts as a defendant and the court presumes that he means to refer to him as Sgt. Roberts.

(*Id.*) He says that the entire process seems designed to delay or negate inmate welfare. (*Id.*)

On October 27, 2019, Verrier again requested a low bunk low tier restriction from medical staff. (*Id.* at 8.) He told them he had pain in his lower back and leg from using the stairs which caused issues involving his ulcerative colitis. (*Id.*) Verrier said that the pain also caused issues with stairs and that he felt at risk of falling. (*Id.*) The nurse evaluating him said that pain was not a factor. (*Id.*)

On October 28, 2019, Verrier informed defendant Sgt. Kramer that he had been moved to the upper tier and that Dr. Murphy had previously ordered low tier due to his bad right knee and risk of falling. (*Id.*) Verrier asked to be moved to a low tier. (*Id.*) He did not receive a response. (*Id.*) Verrier says that it was clear to anyone who observed him going up and down the stairs that he had pain and difficulty. (*Id.*)

On October 29, 2019, the Special Needs Committee again denied Verrier a low bunk low tier restriction, stating that the request did not meet the criteria as defined by policy. (*Id.* at 9.)

On October 30, 2019, Verrier reported that he soiled himself because of difficulty going down the stairs due to intense pain in his lower back, legs, and knee. (*Id.* at 8.) The next day, defendant RN Banin[2] said that he could not give Verrier anything for pain due to Verrier's ulcerative colitis and that the low bunk low tier issue was out of his hands. (*Id.*)

---

[2] RN Banin is not named as a defendant in the caption of the complaint.

On October 31, 2019, Verrier filed an inmate complaint. (*Id.* at 9.) On November 13, 2019, defendant Bubolz rejected his inmate complaint for lower bunk, lower tier. (*Id.*)

On November 15, 2019, Verrier was unable to descend the stairs fast enough to get to the library in time and was turned away. (*Id.*) Two days later, he had intense pain in his knee and hips as well as intense abdominal pain in his lower bowel area. (*Id.*) He tried to get to the restroom but was unable to gain access before his bowels released, due to difficulty descending the stairs and the additional pain incurred while descending the stairs. (*Id.*)

On November 22, 2019, Verrier's right knee gave out when he was going down the stairs and he fell about seven steps hitting his head, elbow, and hip. (*Id.* at 10.) Verrier was taken to health services in a wheelchair and seen by Nurse C and another nurse.[3] They gave him an ice pack and acetaminophen and said they would inform Dr. Murphy of the incident. (*Id.*) No staff followed up on Verrier's condition. (*Id.*)

On November 23, 2019, Verrier wrote to Sgt. Kramer and informed him of the incident, that his knee with osteoporosis collapsed, that he should not be on an upper tier because it placed him at risk, and that on March 10, 2012 Dr. Murphy had indicated that he needed a low tier. (*Id.* at 11.) Verrier did not receive a response. The next day, Verrier told Sgt. Kramer that he should not be on an upper tier because he

---

[3] Nurse C is not named as a defendant in the caption of the complaint.

8

had recently fallen. (*Id.*) Sgt. Kramer mocked Verrier and ordered him back to his room. (*Id.*)

On November 28, 2019, Verrier filed an inmate complaint stating that he "Fell down stairs due to documented disability resulting in concussion, bruising, pain and still located in upper tier." (*Id.*) On December 1, 2019, defendant Gillingham rejected the inmate complaint because "each complaint may contain only one clearly identified issue" and "a complaint must contain sufficient information for the department to investigate and decide the complaint." (*Id.* at 12.)

On December 1, 2019, Verrier wrote to health services complaining that he still had significant lower back pain and that he had difficulty bending. (*Id.*) The next day, nursing staff evaluated Verrier. (*Id.*) Also that day, Verrier sent correspondence to defendant Sarah Felts, Oshkosh's Security Director, requesting the video evidence of the fall. (*Id.*) She responded that they do not preserve videos on inmate request. (*Id.*) That day, Verrier informed defendant Unit Manager Sable that he had fallen, of his existing physical disability, and that he was still located on an upper tier. (*Id.* at 13.) She looked up the prior order but did provide proper accommodations. (*Id.*)

On December 5, 2019, Verrier filed another inmate complaint for not providing low bunk low tier accommodations. (*Id.*)

On December 7, 2019, Verrier fell down almost the entire flight of stairs. (*Id.*) He banged his right knee, right shoulder, had cuts on his right forearm, and intense low back pain. (*Id.*) Verrier was taken to the Health Services Unit and the nurse evaluated him which for the first time included a physical evaluation of his knees and

9

low back. (*Id.*) The nurse wrote a temporary order for low bunk low tier. (*Id.*) She said the order would stand until Dr. Murphy saw him in person. (*Id.* at 14.) On December 8, 2019, Verrier experienced intense low back pain, could not stand erect, had difficulty sleeping with intense back pain as well as pain in his right forearm, shoulder, and hip. (*Id.*)

Verrier states that the following activities were impaired by not providing him with a lower tier access and having to descend and ascend thirty stairs each time: getting clean clothes, making phone calls, getting medicine, getting water, going to the bathroom, going to health services for treatment, getting mail, eating, brushing teeth after meals, going outside, going to the library, getting haircuts, and laundry. (*Id.*) He summarizes his harm as follows:

> Physical pain in the shoulders, hips, knees, head and abdomen. Soiling his clothing with feces. Impacting sleep and daily activities. Plaintiff had constant fear for his safety and his life. Intensifying plaintiff's existing anxiety and depression disorders and contributing to a furtherance of his PTSD condition. Causing plaintiff to be unable to timely reach restroom on occasion resulting in premature bowel movements into his pants causing humiliation and embarrassment. Falls causing physical temporary and permanent damage to his head and back. Causing a concussion, abrasions to his legs and arms, bruising, bump on the head, difficulty bending and intense pain in the low back area. Damage to his right knee, with preexisting knee replacement and current osteoporosis. Humiliation in front of others as he was forced to climb and descend stairs with great difficulty and soiling himself.

(*Id.* at 15.)

Verrier seeks compensatory and punitive damages from each defendant for their role in not performing their duties, for deliberate indifference to his health issues, for ignoring their own policies, and for failing to comply with the Americans

10

with Disabilities Act as well as the Eighth and Fourteenth Amendments to the United States Constitution. (*Id.* at 16.)

2. Analysis

*2.1 Personal Involvement of Certain Defendants*

As an initial matter, I will dismiss Officer A because Verrier does not allege that Officer A had any involvement in the denial of the low bunk low tier restriction. Verrier mentions Officer A in relation to his allegations that he slipped and fell on spilled liquid at Racine Correctional Institution, but he does not make any specific allegation as to Officer A.

Next, Verrier may not proceed on claims against the defendants who participated in the inmate complaint process. Verrier alleges that Bubolz did not take account of his condition in dismissing his inmate complaint and that his investigation relied inappropriately on the decision of Fofana, a member of the Special Needs Committee. However, prison officials who process or review inmate grievances lack personal involvement in the conduct forming the basis of the grievance. *Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017) (citing *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001)). Moreover, the failure to follow a state's inmate grievance procedures is not a federal due process violation. *Id.* (citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996)). Thus, I will dismiss defendants Bubolz, Doehling, Greenwood, and Gillingham.

Finally, Verrier alleges that he asked defendant Sarah Felts to preserve the video of his November 22, 2019 fall and she responded that she does not preserve

11

videos based on an inmate's request. This allegation does not state a plausible claim for relief against Felts.

### 2.2 *Eighth Amendment*

The Eighth Amendment prohibits prison officials from acting with deliberate indifference to prisoners' serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976). A "serious medical need" is a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. *Johnson v. Snyder*, 444 F.3d 579, 584-85 (7th Cir. 2006). A medical need is serious if it is life-threatening, carries risks of permanent serious impairment if left untreated, results in needless pain and suffering, significantly affects an individual's daily activities, *Gutierrez v. Peters*, 111 F.3d 1364, 1371-73 (7th Cir. 1997), or otherwise subjects the prisoner to a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). To be considered "deliberately indifferent," an official must know of and disregard "an excessive risk to an inmate's health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Snipes v. Detella*, 95 F.3d 586, 590 (7th Cir. 1996). However, inadvertent error, negligence, gross negligence, and ordinary malpractice are not cruel and unusual punishment within the meaning of the Eighth Amendment. *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996).

Verrier's alleged ulcerative colitis, knee and back injuries, and chronic, severe pain are serious medical needs under the Eighth Amendments. *See Guttierez*, 111

12

F.3d at 1371-31. He has sufficiently alleged that defendants Nurse A, Nurse B, Sergeant Kramer, Sergeant Roberts, and Unit Manager Sable knew he was suffering from pain, which was exacerbated by the Special Needs Committee's decision to not give him a low bunk low tier restriction, and did not address his concerns. While these defendants arguably relied on the Special Needs Committee's decision that Verrier did not qualify for a low bunk low tier restriction, it is possible that these individuals, who allegedly knew first-hand about Verrier's challenges, could have done something to help him and to prevent his later difficulties. Thus, Verrier may procced on a claim that defendants Nurse A, Nurse B, Sergeant Kramer, Sergeant Roberts, and Unit Manager Sable acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment.

### 2.3 *Americans with Disabilities Act and Rehabilitation Act*

Title II of the Americans with Disabilities Act (ADA) "prohibits a 'public entity' from discriminating against a 'qualified individual with a disability' on account of that disability" and applies to state prisons. *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 206 (1998) (quoting 42 U.S.C. § 12132). To establish an ADA claim, "the plaintiff must prove that he is a 'qualified individual with a disability,' that he was denied 'the benefits of the services, programs, or activities of a public entity' or otherwise subjected to discrimination by such an entity, and that the denial or discrimination was 'by reason of' his disability.'" *Love v. Westville Corr. Ctr.*, 103 F.3d 558, 560 (7th Cir. 1996) (quoting 42 U.S.C. § 12132). Analysis under the Rehabilitation Act (RA), 29, U.S.C. § 794, is essentially the same except that the RA

includes an additional element requiring that the entity denying access receive federal funds. *See Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 671-72 (7th Cir. 2012); *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015) (ADA and RA standards are "functionally identical"). To state claim under the RA, a plaintiff must allege that "(1) he is a qualified person (2) with a disability and (3) the Department of Corrections denied him access to a program or activity because of his disability." *Jaros*, 684 F.3d at 671-72 (citations omitted). I will therefore consider both claims, even thought Pietila mentions only the ADA in his complaint.

"[B]ecause the ADA addresses its rules to employers, places of public accommodation, and other organizations, not to the employees or managers of these organizations," a plaintiff may not sue defendants in their individual capacities – the proper defendant is the organization, or the individual in his or her official capacity. *Walker v. Snyder*, 213 F.3d 344, 346 (7th Cir. 2000) (overruled on other grounds). Like the ADA, the RA has been interpreted to preclude suits against officials in their individual capacities. *See Boston v. Dart*, 2015 WL 4638044, at *2 (N.D. Ill. Aug. 4, 2015) (citing *Stanek v. St. Charles Cmty. Unit Sch. Dist. No. 303*, 783 F.3d 624, 644 (7th Cir. 2015)).

> The term "qualified individual with a disability" means,
>
> an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

14

42 U.S.C. §12131. The term "disability" means "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). Major life activities include, but are not limited to "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). Based on these definitions, Verrier's knee and back injuries, and the resulting pain from the injuries, meet the requirement that he allege he is a qualified individual with a disability. *See Jaros*, 684 F.3d at 672 (plaintiff who had severe hip pain and trouble walking was a qualified individual with a disability under the ADA); *see also Everett v. Baldwin*, 2016 WL 8711476, at *8 (N.D. Ill. Jan. 15, 2016) (prisoner who, as a result of knee injury and resulting pain, could not stand upright or walk, and had to crawl up and down stairs and sleep on the floor, was a qualified individual with a disability).

Verrier has also sufficiently alleged that his access to programs or activities was denied because of his disability. He alleges that the following activities were impaired by the defendants' refusal to give him a low tier restriction: getting clean clothes, making phone calls, getting medicine, getting water, going to the bathroom, going to health services for treatment, getting mail, eating, brushing teeth after meals, going outside, going to the library, getting haircuts, and laundry. This states a plausible claim at the pleading stage. *See Jaros*, 684 F.3d at 672 (inmate stated claim where alleged refusal to accommodate back injury and inability to walk kept prisoners from accessing meals and showers on the same basis as other inmates);

15

*Everett*, 2016 WL 8711476, at *9 (failure to move prisoner to a low bunk and low gallery prevented prisoner from accessing meal and showers, both of which were on the ground floor, because he could not navigate the stairs); *Johnson v. Godinez*, 2015 WL 135103, at *2 (N.D. Ill. Jan. 9, 2015) (disabled inmate's allegations that accommodations at times prevented him from going to meals and stated ADA and RA claims); *Boston v. Dart*, 2015 WL 4638044, at *3 (N.D. Ill. Aug. 4, 2015) (inmate who alleged that he accessed meals and leisure activities on a different basis than other detainees due to his disability stated claim under the ADA and RA).

In sum, Verrier states a claim under the ADA and RA based on his institution's alleged failure to accommodate his disability by providing him a low bunk low tier restriction which impaired his access to prison programs and activities. Because Verrier cannot proceed against any defendant in their individual capacity, I will allow him to proceed against defendant Dr. Murphy, who is one of the Special Needs Committee members, in his official capacity. I will dismiss the other members of the Special Needs Committee (Dr. Wheatly, Health Manager Fofana, Dr. Tannan, RN Halverson, NP Hermes, NP Bowens) because they are not alleged to have had any interaction or personal involvement with Verrier.

Finally, Verrier will need to use discovery to identify the names of Nurse A and Nurse B. Once the named defendants have responded to the complaint, a Scheduling Order will be entered which will set deadlines for identifying Nurse A and B, for the completion of discovery, and for filing dispositive motions. Verrier should not being discovery until after the Scheduling Order is issued.

**THEREFORE, IT IS ORDERED** that Verrier's motion for leave to proceed without prepaying the filing fee (ECF No. 4) is **GRANTED**.

**IT IS FURTHER ORDERED** that defendants Dr. Wheatley, Officer A, Health Manager Fofana, Dr. Tannan, RN Halverson, NP Hermes, NP Bowens, L. Doehling, R. Bubolz, T. Gillingham, M. Greenwood, and Sarah Felts are **DISMISSED**.

Under an informal service agreement between the Wisconsin Department of Justice and this court, a copy of the complaint and this order have been electronically transmitted to the Wisconsin Department of Justice for service on defendants Dr. Murphy, Sgt. Kramer, Sgt. Roberts, and Unit Director Sable. It is **ORDERED** that, under the informal service agreement, those defendants shall file a responsive pleading to the complaint within 60 days.

**IT IS FURTHER ORDERED** that the agency having custody of Verrier shall collect from his institution trust account the $340.42 balance of the filing fee by collecting monthly payments from Verrier's prison trust account in an amount equal to 20% of the preceding month's income credited to Verrier's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this case. If Verrier is transferred to another county, state, or federal institution, the transferring institution shall forward a copy of this order along with his remaining balance to the receiving institution.

17

**IT IS FURTHER ORDERED** that a copy of this order be sent to the officer in charge of the agency where Verrier is confined.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions[4] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the matter.

Verrier is further advised that failure to make a timely submission may result in the dismissal of this case for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in

---

[4] The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin, this 24th day of April, 2020.

**BY THE COURT:**

s/*Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge