# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**JOSEPH VERRIER,**

    Plaintiff,

  v.                                                           Case No. 19-CV-1812

**DR. PATRICK MURPHY,**
**NURSE A,**
**NURSE B,**
**CHAD KREMER,**
**JUSTIN ROBERTS,**
**and KATHERINE SABLE,**

    Defendants.

## ORDER

      Plaintiff Joseph Verrier, who is incarcerated at the Oshkosh Correctional Institution, filed a *pro se* civil rights action under 42 U.S.C. § 1983. I screened the complaint under 28 U.S.C. § 1915A and allowed Verrier to proceed on claims that defendants Nurse A, Nurse B, Sergeant Kramer, Sergeant Roberts, and Unit Manager Sable acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment (Docket #12 at 13), and on claims under the Americans with Disabilities Act and the Rehabilitation Act, against Dr. Murphy in his official capacity, based on allegations that his institution failed to accommodate his disability by providing him a low bunk low tier restriction which impaired his access to prison programs and activities (*Id*. at 16). On June 23, 2020, the named defendants filed an answer to the complaint. (Docket #22.) Verrier filed a proposed

amended complaint on June 30, 2020, *see* Fed. R. Civ. P. 15(a)(1), which I will now screen under 28 U.S.C. § 1915A.[1]

   1. *Federal Screening Standard*

The court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads

---

[1] As a point of clarification, because Verrier filed his amended complaint within twenty-one days of the defendants' answer, it was filed "as a matter of course." Fed. R. Civ. P. 15(a)(1). He did not file a motion to amend and he was not required to do so. Verrier's amended complaint should have been docketed as "amended complaint," not as a "proposed amended complaint." The defendants filed a response to Verrier's "proposed amended complaint," which was not required. In any event, the amended complaint is subject to screening under 28 U.S.C. § 1915A.

factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes *pro se* complaints liberally and it holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

2. *Amended Complaint's Allegations*

Verrier alleges that he has long term pre-existing conditions of ulcerative colitis, a partial right knee replacement with arthritis in his right and left knees, and multiple broken/bulging lower discs in his spine. (Docket #24 at 2.) These conditions allegedly cause difficulty controlling bowel movements, difficulty ascending and descending stairs, shooting pain in the back of Verrier's legs causing weakness which is intensified by stairs, chronic pain, sleep difficulties due to intense pain, inability to kneel due to an implant in the right knee, anxiety, depression, and "PTSD." (*Id.* at 3.)

In his amended complaint, Verrier reiterates his original complaint allegations that staff at Oshkosh will not give him a "low tier restriction" despite a March 6, 2012 note from Dr. Murphy in his medical records stating that Verrier needs a low tier

3

restriction indefinitely to avoid falls and a July 17, 2018 order from Dr. Hoftiezer (not a defendant) that Verrier have a low tier restriction for 365 days due to his knee replacement.

Verrier's amended complaint sets forth a timeline, beginning in September 2019, of correspondences, inmate complaints, and medical appointments in which his requests for a low tier restriction were repeatedly denied. During this time, Verrier allegedly nearly fell on the stairs multiple times, fell on the stairs twice causing injury, experienced intense pain because of using the stairs to get to and from his upper tier cell, and soiled himself because he could not get to the bathroom in time because he had to use the stairs to get to the bathroom. Verrier requested a low tier restriction from both the medical staff who examined him and from non-medical staff who he informed of and/or who witnessed his struggles. For the most part, both the medical and non-medical staff members said they could not help Verrier with his low tier restriction request because the "Special Needs Committee" had denied his request for a low tier restriction.

Specifically, on September 13, 2019, Verrier informed medical staff in writing that Dr. Murphy had previously ordered a permanent low tier restriction and that the physician at Dodge Correctional had also ordered such a restriction. (*Id.*) Verrier was notified to file an institutional complaint. (*Id.*)

On September 11 and October 29, 2019, the Special Needs Committee denied Verrier's request for a low tier restriction. (*Id.*) The Special Needs Committee is

4

composed of defendants Dr. Murphy, Dr. Wheatley, NP Hermes, HSU Manager Fofana, Dr. Tannan, NP Bowens, and RN Halverson. (*Id.*)

On September 14, 2019, Verrier filed an inmate complaint pointing out that two DOC doctors had previously ordered low tier restrictions due to bad knees. (*Id.*) Verrier subsequently filed offender complaints on October 31, November 28, and December 5, 2019. (*Id.*) In these offender complaints, Verrier described his pain and difficulty with the stairs and he identified defendants Sgt. Kramer, Sgt. Roberts, and Unit Manager Sable as being aware of the situation. (*Id.*)

On September 16, 2019, defendant HSU Manager Fofana allegedly reviewed Verrier's medical file and determined that there was no need to accommodate his low tier request. (*Id.*)

On October 18, 2019, Verrier notified medical staff that he had been moved to an upper tier upper bunk, that he had already nearly fallen on the stairs, and that he could not kneel on the disk in his knee, a requirement for climbing into an upper bunk. (*Id.*) The next day, defendant Nurse Michelle Lewis evaluated Verrier and performed a limited physical exam. (*Id.*) She did not evaluate the pain in his lower back. (*Id.*) When Verrier asked Nurse Lewis why she did not evaluate his back pain, she responded that that was not part of the evaluation or assessment. (*Id.*)

Also on October 19, 2019, Verrier notified defendant Sgt. Roberts, who has the authority to move inmates, of his condition. (*Id.* at 4-5.) Sgt. Roberts said that Verrier appeared healthy and that Roberts himself had broken his back from a fall and felt no need to accommodate Verrier. (*Id.*) Sgt. Roberts also said that prisoners had

5

previously soiled themselves to attempt to gain benefits and that he would not accommodate Verrier unless medical staff and the computer directed him to do so. (*Id.*) That same day, defendant Nurse Anderson evaluated Verrier for a low tier. (*Id.* at 5.) Nurse Anderson's report stated that it was difficult for Verrier to access the restroom from the upper tier, that he could "not effectively very difficult" climb stairs, that he had a partial right knee replacement, frequent falls, and that he reported falling up the stairs. (*Id.*) Nurse Anderson did not order a low tier restriction. (*Id.*)

On October 25, 2019, defendant Sgt. Sparks witnessed Verrier's leg collapse under him and commented that he should be on a lower tier. (*Id.* at 6.)

On October 27, 2019, Verrier again requested a low bunk low tier restriction from medical staff. (*Id.*) He informed medical staff, "I am experiencing sharp pain in lower back into leg due to use of the stairs." (*Id.*)

On October 28, 2019, Verrier informed Sgt. Kramer that he had been moved to an upper tier despite Dr. Murphy's previous order of a lower tier due to his bad right knee and risk of falling. (*Id.*) Verrier did not receive a response from Sgt. Kramer. (*Id.*)

On October 30, 2019, Verrier reported to HSU that, "again I soiled myself due to difficulties going down stairs due to intense lower back pain into the legs and in the knee." (*Id.*) The next day, defendant Nurse Michael Milner indicated that due to Verrier's ulcerative colitis there was nothing he could do for the pain, and that the low tier issue was out of his hand. (*Id.*)

6

Case 2:19-cv-01812-NJ    Filed 08/12/20    Page 6 of 15    Document 32

On November 17, 2019, Verrier was unable to get to the restroom before his bowels released due to difficulty descending the stairs. (*Id.* at 7.)

On November 22, 2019, Verrier's right knee gave out while was going down the stairs and he fell down the stairs hitting his head, elbow, and hip. (*Id.*) Sgt. Roberts witnessed the fall. (*Id.*) Verrier was taken to health services in a wheelchair. (*Id.*) While there, Nurse Swartout (not a defendant) and defendant Nurse Sarah Town provided him with an ice pack and said that Dr. Murphy would be informed of the incident. (*Id.* at 7-8.) Verrier was returned to his unit on the upper tier. (*Id.* at 8.)

On November 23, 2019, Verrier woke up with bruising and soreness from his fall. (*Id.*) He wrote to Sgt. Kramer and informed him of the fall, that his knee had collapsed, that he should not be on an upper tier, and that Dr. Murphy had previously indicated he needed a low tier. (*Id.*) Verrier did not receive a response. That same day, Verrier wrote to defendant Unit Manager Sable regarding the situation. (*Id.*)

On December 2, 2019, Verrier wrote to health services complaining of pain and difficulty bending since his fall. (*Id.*) The next day, defendant Nurse Feltz evaluated him and informed him that he was scheduled to be seen by Dr. Murphy. (*Id.*) She noted that Verrier was "walking slowly while holding left side of lower back and grimacing," that he had "limited ROM on back and right knee," and that he feared falling again. (*Id.*) Nurse Feltz did not place Verrier on a low tier. (*Id.*)

That same day, Verrier met with Unit Manager Sable in her office. (*Id.*) He informed her of his existing disability and that he was still located on the upper tier. (*Id.*) Sable looked in her computer and confirmed that Verrier previously had a low

7

tier restriction but that it was no longer in effect. (*Id.*) She did not relocate him to a lower tier. (*Id.*)

On December 6, 2019, Sgt. Sparks informed Verrier that he had observed his difficulties and that he had emailed Sgt. Kramer of the issue. (*Id.*) Sgt. Kramer and Sgt. Roberts were allegedly responsible for moving people to proper housing. (*Id.*)

On December 7, 2019, Verrier fell going down the stairs and injured himself. (*Id.*) He was again taken to the HSU in a wheelchair. (*Id.*) Defendant Nurse Ostrander evaluated him and wrote a 14-day order for him to have a low tier restriction due to two falls. (*Id.*) The form on which she wrote the order had a box for permanent placement, but she did not check that box. (*Id.*) She said he would be seen by Dr. Murphy before the order expired. (*Id.*)

On December 14, 2019, HSU Manager Foster determined that there was no medical necessity to place Verrier on a low tier. (*Id.* at 10.)

On March 3, 2020, Dr. Murphy examined Verrier. (*Id.*) He noted the two falls and the back pain, and he prescribed six sessions of physical therapy and pain medication. (*Id.*) Dr. Murphy did not write an order for a low tier but, instead, informed Verrier that he could appeal to the Special Needs Committee again but that an artificial knee and arthritis do not qualify for a low tier placement. (*Id.*)

On April 7, 2020, Verrier arranged to discuss his concerns with the unit social worker regarding his roommate's contraband items held in his room and the social worker said she would inform security staff. (*Id.*) On April 8, 2020, Sgt. Roberts told Verrier's roommate that "someone very close to you has snitched on you, I hate

snitches." (*Id.*) Verrier believes that this was Sgt. Roberts' attempt to retaliate against him for filing this case. (*Id.*)

Verrier states that the following activities have been impacted by not providing him with a low tier access, which means he has to descend and ascend thirty stairs each time: getting clean clothing, making phone calls, getting medicine, getting water, going to the bathroom, going to health services, getting/sending mail, eating, brushing teeth, going outside, going to the library, getting haircuts, and laundry. (*Id.* at 11-12.) He has suffered physical harm as a result of falling and the pain in his back is now constant and it radiates into his left leg. He has soiled his clothing with feces causing humiliation and embarrassment.

Verrier sues defendants Dr. Murphy, HSU Manager Fofana, HSU Manager Foster, Unit Manager Sable, Dr. Wheatley, NP Hermes, Dr. Tannan, NP Bowens, and RN Halverson for "failure to supervise." (*Id.* at 12-13.) He sues Dr. Murphy, HSU Manager Fofana, HSU Manager Foster, Sgt. Kramer, Sgt. Roberts, Unit Manager Sable, Nurse Town, Nurse Lewis, Nurse Milner, Nurse Anderson, Nurse Feltz, and Nurse Ostrander for deliberate indifference and violating the Americans with Disabilities Act. Lastly, Verrier sues Sgt. Roberts for retaliation. He seeks compensatory and punitive damages.

3. *Analysis*

The Eighth Amendment prohibits prison officials from acting with deliberate indifference to prisoners' serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976). As explained in the court's order screening the original complaint, Verrier's

9

allegations state a claim for deliberate indifference to his serious medical needs. (*See* Docket #12 at 12-13.) Verrier may proceed on an Eighth Amendment claim against the following defendants in their individual capacities: Dr. Murphy, HSU Manager Fofana, HSU Manager Foster, Sgt. Kramer, Sgt. Roberts, Unit Manager Sable, Nurse Town, Nurse Lewis, Nurse Milner, Nurse Anderson, and Nurse Feltz. Construed liberally, Verrier sufficiently alleges that each of these defendants knew he was suffering from pain and did not address his concerns. While these defendants arguably relied on the Special Needs Committee's decision that Verrier did not qualify for a low tier restriction, it is possible that these individuals, who allegedly knew about Verrier's challenges (such as his pain, falling, and soiling himself), could have done something to prevent him from having to climb stairs.

On the other hand, Verrier may not proceed on an Eighth Amendment against Nurse Ostrander. Verrier's only allegations against her are that after his second fall on December 7, 2019, she wrote him a fourteen-day low tier restriction. Verrier seems to take issue with Nurse Ostrander's failure to give him a permanent low tier restriction, but he also alleges that she told him he would be seeing Dr. Murphy before the fourteen-day restriction expired. These allegations do not support a deliberate indifference claim against Nurse Ostrander, and I will therefore dismiss her from this case.

In addition, Verrier does not state a claim against Sgt. Sparks. He merely alleges that Sgt. Sparks commented that he was aware of Verrier's issues and he also alleges that Sgt. Sparks emailed Sgt. Kramer (who was allegedly responsible for

10

moving inmates to "proper housing") about Verrier's difficulties on December 6, 2019. These allegations do not support a claim for deliberate indifference, and I will therefore dismiss Sgt. Sparks.

Turning to Verrier's ADA claim, I previously determined that Verrier stated a claim under both the ADA and the Rehabilitation Act (RA) based on his institution's failure to accommodate his disability by providing him a low tier restriction which allegedly impaired his access to prison programs and activities. (Docket #12 at 13-16.) As explained in this screening order, the proper defendant in a claim under the ADA and RA is the organization, or the individual in his or her official capacity, and I allowed Verrier to proceed against Dr. Murphy in his official capacity on claims under the ADA and RA. Verrier does not seek injunctive relief in this case, only compensatory and punitive damages. Compensatory damages may be recovered under the ADA and the RA, if Verrier can show intentional discrimination. *See Phipps v. Sheriff of Cook Cnty.*, 681 F. Supp. 2d 899, 917 (N.D. Ill. 2009); *see also Morris v. Kingston*, 368 F. App'x 686, 689-90 (7th Cir. 2010). Verrier does not name the Wisconsin Department of Corrections as a defendant. Thus, I will allow him to proceed on a claim against Dr. Murphy in his official capacity under the ADA and the RA based on his allegations that the institution's Special Needs Committee refused to give him a low tier restriction.

Next, Verrier may not proceed on "failure to supervise" claims against any defendants. Section 1983 makes public employees liable "for their own misdeeds but

11

not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009); *see George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007).

Finally, Verrier alleges that he thinks that Sgt. Roberts retaliated against him for filing the original complaint in this case. To establish a prima facie case of unlawful retaliation, a plaintiff must show "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) (quoting *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)). Verrier does not sufficiently allege that the filing of the complaint in this case was "at least a motivating factor" in Sgt. Roberts' decision to tell his cellmate on April 7, 2020, that someone very close to him had snitched on him. The screening order was not issued until April 24, 2020, so Sgt. Roberts would not have had notice of this case until after the April 7, 2020 date of the alleged retaliatory act. Verrier does not state a retaliation claim against Sgt. Roberts.

In sum, Verrier may proceed on a claim that defendants Dr. Murphy, HSU Manager Fofana, HSU Manager Foster, Sgt. Kramer, Sgt. Roberts, Unit Manager Sable, Nurse Town, Nurse Lewis, Nurse Milner, Nurse Anderson, and Nurse Feltz acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment. He may also proceed on claims under the ADA and RA against defendant Dr. Murphy. All remaining claims and defendants will be dismissed.

12

*4. Motion for Appoint Counsel*

Verrier has filed a motion to appoint counsel. (Docket # 28.) He states that he has attempted to find a lawyer on his own. Verrier also states that this case will likely require expert witnesses, involves the state of mind of various defendants, and is constitutionally complex. On June 18, 2020, I denied Verrier's motion for reconsideration of my May 22, 2020 order denying without prejudice his motion appointment counsel. (Docket # 21.) I construed Verrier's motion for reconsideration as a renewed request for counsel and determined that he had made a reasonable attempt to find a lawyer on his own. I also reiterated my previous finding that Verrier's filings are advanced compared with other prisoners' filings and demonstrate that he can present his claims to the court and advocate for himself. I concluded that Verrier is competent to represent himself during the pretrial phase of this case. I also encouraged Verrier to file a motion for extension of time if he needed additional time to complete discovery and file dispositive motions.

Verrier's renewed motion to appoint counsel does not convince me that he needs a lawyer at this stage of the case. If this case proceeds beyond the summary judgment stage, I will reconsider his request for counsel. Thus, I will deny without prejudice Verrier's motion to appoint counsel.

*5. Motion to Add Claim*

On July 27, 2020, Verrier filed a motion to add claim of destruction of evidence. (Docket # 31.) He states that after his November 22, 2019 fall down the stairs, he asked Sarah Felts to "preserve that evidence." According to Verrier, on July 23, 2020,

13

defense counsel claimed that the evidence no longer existed. He seeks to add a charge of destruction of evidence against Sarah Felts, who works at Oshkosh.

Sarah Felts is not a defendant in this case. Verrier does not state a separate claim for relief against Felts based on allegations that she destroyed evidence. Verrier may file a motion to compel discovery regarding this evidence which will provide an opportunity for counsel for defendants to respond to Verrier's allegations regarding evidence from the alleged fall. I will deny Verrier's motion to add claim.

## ORDER

**THEREFORE, IT IS ORDERED** that the proposed amended complaint (Docket # 24) is the operative complaint.

**IT IS FURTHER ORDERED** that Verrier may proceed against on an Eighth Amendment deliberate indifference to a serious medical need claim against defendants Dr. Murphy, HSU Manager Fofana, HSU Manager Foster, Sgt. Kramer, Sgt. Roberts, Unit Manager Sable, Nurse Town, Nurse Lewis, Nurse Milner, Nurse Anderson, and Nurse Feltz, and a claim under the ADA and RA against defendant Dr. Murphy. All remaining claims and defendants are **DISMISSED**.

Under an informal service agreement between the Wisconsin Department of Justice and this court, a copy of the amended complaint (Docket # 24) and this order have been electronically transmitted to the Wisconsin Department of Justice for service on defendants Dr. Murphy, HSU Manager Fofana, HSU Manager Foster, Sgt. Kramer, Sgt. Roberts, Unit Manager Sable, Nurse Town, Nurse Lewis, Nurse Milner, Nurse Anderson, and Nurse Feltz. It is **ORDERED** that, under the informal service

agreement, **those defendants shall file a responsive pleading to the amended complaint within 30 days.**

IT IS FURTHER ORDERED that Verrier's motion to appoint counsel (Docket # 28) is **DENIED WITHOUT PREJUDICE**.

IT IS FURTHER ORDERED that Verrier's motion to add claim (Docket # 31) is **DENIED**.

Dated at Milwaukee, Wisconsin, this 12th day of August, 2020.

BY THE COURT:

_____
NANCY JOSEPH
United States Magistrate Judge